## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JEFFREY J. BUTLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-cv-3226 |
| | ) | |
| HOLSTEIN ASSOCIATION, USA, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

This matter is before the Court on Defendant Holstein Association, USA, Inc.'s ("Holstein") Motion to Dismiss (d/e 22).  For the foregoing reasons, the Motion (d/e 22) is GRANTED.  Plaintiff Jeffrey J. Butler's Amended Complaint (d/e 20) is DISMISSED WITH PREJUDICE in its entirety for failure to state a claim.

### I.    FACTUAL ALLEGATIONS

The following facts are taken from Plaintiff Butler's Amended Complaint (d/e 20) and are accepted as true at the motion to dismiss stage.  Bible v. United Student Aid Funds, Inc., 799 F.3d 633, 639 (7th Cir. 2015).

**A. Background**

Plaintiff alleges Butlerview Farms is in Chebanse, Illinois, and has been in his family for decades.  See d/e 20, ¶ 22.  The farm, including the Plaintiff and his family, have been members of Defendant Holstein Association USA, Inc. ("Holstein") for approximately 75 years.  Id.

Plaintiff claims that, at all relevant times, John Meyer was the Executive Secretary of Holstein.  Id. at ¶ 6.  Peter Cole was the Executive Director of Dairy Policy, Industry Affairs, and Governance for Holstein.  Id. at ¶ 7.  Jenifer Levisee-Phillips was the Manager of Quality Assurance at Holstein.  Id. at ¶ 8.  Roy Buessing, Mike Jones, and Patrick Maddox were members of the Holstein Board of Directors.  Id. at ¶¶ 9–11.

Plaintiff asserts dairy farmers formed Holstein as an association that advocates for the Holstein breed of cow—specifically for the purpose of improving the breed of Holstein cattle; ascertaining, preserving, and disseminating all useful information and facts as to their pedigrees and desirable qualities; and, generally for promoting the best interests of the importers, breeders, and owners of the cattle, and the public generally.  Id. at

¶ 49.  In order to achieve its purposes and goals, Holstein maintains a strict procedure for tracking each Holstein cattle.  Id. at ¶ 50.  Employees of Holstein, like Meyer, Cole, and Levisee-Phillips, are responsible for maintaining the records of Holstein and all its members, including Butler, and Buter's related entities and partners.  Id.

Plaintiff contends Holstein operates as a monopoly, essentially controlling entry into the Holstein dairy industry that can accept and expel members.  Id. at ¶ 51.  Plaintiff further asserts that members of the Holstein Board have an interest in expelling members like Plaintiff who create more competition in the industry. Id.  Plaintiff alleges Meyer arbitrarily singled Plaintiff out when others in the dairy farming industry became jealous of Plaintiff after hearing rumors.  Id.  Plaintiff does not discuss the nature of the rumors.  Plaintiff alleges that Meyer, on behalf of Holstein, devised a plan to improperly accuse Butler of wrongdoing and expel Butler from Holstein.  Id.

Plaintiff alleges that Meyer knew Butler's expulsion from Holstein would cause Butler to "never survive in an industry" in which Butler needed to be a member of Holstein to satisfy his

contracts.  Id. at ¶ 52.  Plaintiff further asserts that membership of Holstein is a prerequisite to breed, register, and sell Holstein cattle. Id. at ¶ 54.  Plaintiff claims Holstein failed to treat him with the "integrity, honesty and fair dealing" that Holstein owed Plaintiff as a member of Holstein.  Id.  at ¶ 57.

Meyer is the sole gatekeeper of Holstein and has "charge of all programs" of Holstein and the authority to investigate members and initiate appropriate actions.  Id. at ¶ 57.  Under the "Rules To Preserve Integrity And For Hearings and Appeals" ("the Rules"), "[u]pon receipt of information raising any doubts as to the integrity of any person or the integrity or propriety of any record relating to any animal," Meyer shall "cause such matter to be investigated" and "may initiate steps intended to resolve such doubts as to the integrity or propriety and to impose such lawful sanctions and to take such action as appears to be appropriate to the circumstances."  Id. at ¶ 58.

**B. Plaintiff's Business Relationships and Contracts**

Plaintiff alleges he is the founder of Butlerview Holdings, LLC ("Butlerview Holdings"), which fully owned three subsidaries: (1) Butler Dairy Cattle, LLC ("Butler Dairy Cattle"); (2) Butler Dairy

Boarding, LLC ("Butler Dairy Boarding"); and (3) Butler Auctions, LLC ("Butler Auctions").  Id. at ¶ 23.  Butler Dairy Cattle owned, raised, and bred Holstein cattle.  Id.  Butler Dairy Boarding bred and boarded Holstein cattle.  Id.  at ¶¶ 23, 25.  Butler Auctions operated a Holstein cattle auction business.  Id. at ¶ 23.  Butlerview Holdings also owned an interest in Jetstream Genetics, LLC ("Jetstream"), which operated a Holstein bull-semen extraction and sales company for Holstein cattle.  Id. at ¶ 27.

Plaintiff identifies two breeding partnerships: Innovative Holstein Genetics I, LLC ("Innovative") and Endeavor Genomic Holsteins, LLC ("Endeavor").  Id. at ¶ 29.  Plaintiff was also a member of Innovative Holstein Genetics Management, Inc. ("Innovative Management"), the manager of Innovative.  Id. at ¶¶ 25, 29.  Plaintiff expected that moving forward, Butler Dairy Cattle's breeding and boarding activities would be mostly conducted through Endeavor or other breeding partners.  Id.  at ¶ 24.  Plaintiff also partnered with Innovative by providing breeding and boarding facilities through Butler Dairy Boarding, auction services through Butler Auctions, and bull stud semen extraction through Jetstream.  Id. at ¶ 30.  Butler Diary Boarding entered into agreements with

Endeavor to provide for the breeding and boarding of Holstein animals in a manner similar to Plaintiff's partnership with Innovative.  Id. at ¶ 33.  Butler Auctions conducted auctions of Holstein cattle at Milksource, LLC's ("Milksource") facilities for Endeavor.  Id. at ¶ 26.

Plaintiff alleges he executed a contract with Milksource in 2014, in which Plaintiff provided embryos to Milksource in return for surrogate mothers.  Id.  at ¶ 42.  Plaintiff alleges that he was fulfilling this contract at the time of his expulsion from Holstein, leaving him with no alternative but to exit the contract with Milksource.  Id.  Butler alleges that Holstein was aware of the existence of the Milksource contract.  Id.  at ¶ 43.  Plaintiff also asserts that at the time of his expulsion, Holstein was aware of all other contracts Plaintiff had executed in connection with his operations at Butler Dairy Cattle, Butler Dairy Boarding, and Butler Auctions, as well as his involvement in Holstein-related entities such as Endeavor, Innovative, and Jetstream.  Id.  at ¶¶ 44, 47.  Plaintiff further alleges that Holstein knew expelling Plaintiff would force him to breach all of his contracts.  Id.

### C. Allegations Against Plaintiff and Hearing

Plaintiff alleges that, on October 21, 2016, Holstein sent Plaintiff a letter ("the letter") authored by Meyer, informing Plaintiff that it was "permanently expelling [him] from membership in [Holstein] and permanently den[ying] all privileges of [Holstein]." Id. at ¶ 59; Id. at Ex. A.  In the letter, Holstein explained that it conducted an investigation and concluded that Plaintiff violated Holstein's Bylaws, Rules, and Regulations.  Id.  Holstein informed Plaintiff that Holstein investigated records supplied by employees of Butlerview Farms and concluded that discrepancies existed in certain animal birth information.  Id.   Additionally, Holstein accused the Plaintiff of removing and replacing the eartags of several Holstein animals in an effort to fraudulently increase their value.  Id.  Holstein informed the Plaintiff that Plaintiff would "no longer have the privilege or right to register or transfer any animals or conduct any other business with [Holstein]."  Id. at ¶ 60. Holstein further "advised [Plaintiff] to sell/transfer any animals or embryos [Plaintiff owned] solely or in partnership out of [Plaintiff's] name."  Id.  The Plaintiff alleges the Holstein never informed him that he was under investigation or sought an explanation about what Holstein considered to be questionable practices.  Id. at ¶ 61.

On November 3, 2016, the Plaintiff requested a formal hearing on the issues raised in the letter.  Id. at ¶ 68.  On December 13, 2016, a hearing took place at Holstein's offices in Vermont.  Id. ¶ 69.  Plaintiff was not told which "Bylaws, [R]ules, and [R]egulations" he allegedly violated and was not told that he could be represented by an attorney at the hearing.  Id. at ¶¶ 63, 67.  Holstein was represented by Attorney Steven Phillips at the hearing.  Id. at ¶ 70.  The Plaintiff was not provided with Holstein's exhibits prior to the hearing.  Id. at ¶ 71.  The hearing was presided over by Holstein Board members Buessing, Maddox, and Jones, all of whom were represented by Attorney James Valente at the hearing.  Id. at ¶ 72.

Plaintiff alleges that, during Cole's direct questioning at the hearing, Cole articulated which Bylaws, Rules, and Regulations Plaintiff violated.  Id. at ¶ 75.  Plaintiff claims Cole's testimony constituted grandstanding: Plaintiff allegedly violated Article IV, sections II, XI, and XXI of the Bylaws, and Cole recommended permanent expulsion from Holstein.  Id.  Plaintiff contends Cole and Levisee-Phillips were Meyer's pawns who were willing participants in Meyer's personal vendetta against Plaintiff.  Id.  Levisee-Phillips testified at the hearing she never bothered to contact the Plaintiff

about the allegations of fraudulent conduct.  Id. at ¶ 77.  Rather,
Levisee-Phillips communicated this to Kathleen O'Keefe, an
employee of Butlerview Farms and a member of Holstein. Id.
Levisee-Phillips testified that she essentially spearheaded the
investigation against Plaintiff and the misrepresented birthdates of
the Holstein animals.  Id. at ¶ 78.  Levisee-Phillips further testified
that she communicated with Dr. George Wiggans concerning
genetic testing of the animals regarding the animals' correct birth
dates.  Dr. Wiggans was not present at the hearing for questioning.
Id. at ¶ 79.

The Plaintiff testified that, because he lives approximately two
and one-half hours away from his family's farm in Chebanse,
Illinois, Plaintiff cannot be at the farm every day.  Id. at ¶ 80.
Therefore, Plaintiff has hired and trained Butlerview Farms
employees and delegated all farm operations to those employees.
Id.  The Plaintiff testified that he hired former Holstein employee
Kathleen O'Keefe to handle the registration and documentation of
Holsteins and, when O'Keefe first started months before the
investigation, she was overwhelmed at the farm.  Id. at ¶ 81.  The
Plaintiff claims Holstein did not establish evidence he was guilty of

fraud or that he had any knowledge of the misrepresented birthdates.  Id. at ¶¶ 82, 83.  Moreover, Holstein presented no evidence that Plaintiff was personally involved in the tagging, re-tagging, application, re-application, or withdrawal of any information pertaining to the subject Holsteins.  Id. at ¶ 85.

Plaintiff alleges that, once he learned of the incorrect birthdates, Plaintiff contacted the purchasers of the animals and resolved the matter to purchasers' satisfaction.  Id. at ¶ 86.  Plaintiff further claims that a few instances of inaccuracies do not constitute a "pattern" of conduct on his part.  Id. at ¶ 87.

Plaintiff alleges that, during Meyer's closing statement, Meyer stated in his 20 years as Executive Secretary, Plaintiff's conduct was the "most calculated and blatant example of misrepresentation".  Holstein did not elicit such testimony from Meyer and the statement was not subject to cross-examination.  Id. at ¶ 88.  Another Holstein director who presided over the hearing stated that he talked to other persons about this issue.  Id. at ¶ 89. The Plaintiff claims that factual investigation by anyone on the presiding tribunal is improper and cannot be subject to cross-examination by Plaintiff.  Id.

### D. Holstein's Decision and Plaintiff's Appeal

On January 16, 2017, the Holstein Committee issued a decision rejecting Meyer's request for a permanent ban on Plaintiff, instead reducing the ban to five years. <u>Id.</u> at ¶ 90; <u>Id.</u> at Ex. B. The decision also extended the ban to any personal representative acting on the Plaintiff's behalf. <u>Id.</u> at ¶ 91. The Committee instructed Plaintiff to sell/transfer any animals or embryos that he owned prior to his suspension from the Association. <u>Id.</u> at ¶ 92. The Holstein Committee decision further provided that Plaintiff could "later re-apply for membership if he can conform to the high standard" set forth by the Holstein Bylaws, Rules, and Regulations. <u>Id.</u> at ¶ 93. Plaintiff claims Holstein knew or should have known that the five-year ban would end Plaintiff's career as a dairy farmer. <u>Id.</u>

On January 27, 2017, Plaintiff filed a Notice of Appeal to the Board of Directors of Holstein. <u>Id.</u> at ¶ 94. On March 31, 2017, a hearing on the appeal was held before the entire Board. <u>Id.</u> at ¶ 96. The Plaintiff alleges the hearing was a charade. <u>Id.</u> at ¶ 97.

Plaintiff further claims that other members of Holstein, including one of the directors, have instructed others to remove tags

from Holstein cattle.  Id. at ¶ 98.  In 2016, Holstein director John Anderson instructed Joe Price, the farm manager at Butlerview Farms, to remove tags and replace the old tags with new tags on one of Anderson's animals that was residing at the farm.  Id.  Even though Anderson committed the same type of fraud that Plaintiff is accused of committing, Anderson did not recuse himself from the decision to suspend Plaintiff and approved the penalty on Plaintiff. Id.

Plaintiff further alleges that the confusion regarding the age of the cattle originated at Milksource, the Wisconsin dairy farm where the cattle were born.  Id. at ¶ 99.  However, Milksource was not investigated or sanctioned.  Id.

Holstein, however, notified the United States Department of Agriculture and the State of Wisconsin Department of Agriculture of the Plaintiff's alleged wrongdoing, resulting in those agencies investigating Plaintiff despite the fact that Milksource was not investigated.  Id. at ¶ 100.

Plaintiff also asserts that in 2014, Holstein, through Levisee-Phillips, notified Plaintiff that he was the victim of fraud when he had purchased a female cow, named Zehrview Attic Eggo, for

$50,000.  Id. at ¶ 101.  Eggo was registered as being born in September 2013, won a national show in April 2014, and was consigned to the International Intrigue sale in 2014.  Id.  After being notified of Eggo's incorrect heritage, Plaintiff learned through a DNA sample that the heritage and birthdate of Eggo were incorrect.  Levisee-Phillips conducted an investigation and concluded that the cow's heritage and birthdate were incorrect.  Id.  However, in this instance, Levisee-Phillips concluded that it was "just a mistake," did not impose a penalty on the offending party, and did not assist Butler in recouping his $50,000.  Id.

Plaintiff claims that, on February 6, 2017, Plaintiff offered to settle the dispute at the center of his eventual suspension from Holstein by sending a letter to Holstein's counsel, Steven Phillips, and informing Phillips that he intended to bring claims against Holstein and others.  Id. at ¶ 102.  Holstein rejected Plaintiff's offer of settlement.  Id. at ¶ 103.  Executive Secretary Meyer did not communicate the offer to the Board, in breach of his fiduciary duties to the Board.  Id.  Meyer offered to reduce Plaintiff's penalty to a three-year ban from Holstein, an offer Plaintiff rejected because

he had done nothing wrong and was arbitrarily singled out for punishment because of Meyer's personal vendetta.  Id. at ¶ 104.

On April 1, 2017, the Board affirmed the decision of the hearing panel, thereby imposing a five-year ban on Plaintiff from the Association from February 16, 2017, to February 15, 2022.  Id. at ¶¶ 105, 106; Id. at Ex. C.  Plaintiff was told to sell/transfer his cattle or embryos that he owned solely or in partnership out of Plaintiff's name by May 5, 2017.  Id. at ¶ 107.  In June 2017, Holstein published the penalty that it imposed on Plaintiff in its monthly industry publication, which is distributed to Holstein dairy farmers throughout the United States.  Id. at ¶ 109.

Plaintiff claims the penalty was the result of Meyer's personal vendetta against Plaintiff and Meyer's desire to effectively drive Plaintiff out of the industry.  Id. at ¶¶ 110–113.  Following the suspension, some Holstein employees and others in the industry told the Plaintiff that "Meyer wanted to make an example of him." Id. at ¶ 113.

Plaintiff alleges claims for tortious interference with prospective business relations (Count I), tortious interference with contract (Count II), and promissory estoppel (Count III).  Id. at ¶¶

115–43.  Defendant moves to dismiss all claims for failure to state a claim upon which relief may be granted.  See d/e 23.

## II.   JURISDICTION AND VENUE

The Court has diversity jurisdiction.  See 28 U.S.C. § 1332(a)(1) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States . . . ").  Plaintiff Butler is a citizen of Illinois.  See d/e 20, ¶ 4.  Defendant Holstein has its principal place of business in Vermont and is incorporated under the laws of New York.  Id. at ¶ 5.  The amount in controversy exceeds $75,000.  Id. at ¶ 3.  Venue is proper because Defendant does business in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.  28 U.S.C. § 1391(b)(1), (b)(2).

## III.   LEGAL STANDARD

Defendants move to dismiss Plaintiffs' Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "A Rule 12(b)(6) motion tests 'the legal sufficiency of a complaint,' as measured against the standards of Rule 8(a)."  Gunn v. Cont'l Cas. Co., 968

F.3d 802, 806 (7th Cir. 2020) (quoting <u>Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana</u>, 768 F.3d 510, 526 (7th Cir. 2015)).  Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The pleading need not contain "detailed factual allegations" to pass a Rule 12(b)(6) challenge but still must "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007)).  Moreover, while all factual allegations are accepted as true on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986); <u>see also</u> <u>Iqbal</u>, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting <u>Twombly</u>, 550 U.S. at 555)).  Accordingly, a complaint will be dismissed if it is legally insufficient to the extent that no set of facts could support the claims raised.

## IV.   ANALYSIS

"[A] federal court sitting in diversity applies the substantive law of the state in which it is sitting[.]" <u>Protective Life Ins. Co. v.</u>

Hansen, 632 F.3d 388, 392 (7th Cir. 2011); see also Nat'l Am. Ins. Co. v. Artisan & Truckers Case. Co., 796 F.3d 717, 723 (7th Cir. 2015).  Because this Court has diversity jurisdiction over this action and is sitting in Illinois, and because neither party has provided any indication that it believes a different state's law should apply, Illinois substantive law and federal procedural law apply.  Hahn v. Walsh, 762 F.3d 617, 629 (7th Cir. 2014); see RLI Ins. Co. v. Conseco, Inc., 543 F.3d 384, 390 (7th Cir. 2008).

### A. Plaintiff Butler is the Real Party in Interest.

The Court finds that Plaintiff Butler is the real party in interest.  Holstein alleges that Plaintiff cannot assert tortious interference claims because Plaintiff is not the real party in interest.  Holstein argues that the harms alleged in Plaintiff's Amended Complaint were suffered by Dairy Cattle, Dairy Boarding, and Butler Auctions (collectively, the "Butler Entities"), and not Plaintiff himself.

Under the Federal Rules of Civil Procedure, "[a]n action must be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a)(1).  The Court determines who the "real party in interest" in this diversity suit is by applying Illinois substantive law.

See Frank v. Hadesman & Frank, Inc., 83 F.3d 158, 159 (7th Cir. 1996); see also Bethine W. Alberding Estate Admin. Trust, ex rel. Moore v. Vinoy Park Hotel Co., No. 03 C 1250, 2005 WL 1705816, at *3 (N.D. Ill. July 20, 2005). The "real party in interest" is one who possesses the substantive right being asserted. Monterey Agr. Prods., Inc. v. August Battaglia Processing Co., Inc., No. 85 C 04541, 1998 WL 92698, at *2 (N.D. Ill. Aug. 25, 1988); see also Lyons v. Ryan, 780 N.E.2d 1098, 1102 (Ill. 2002) (a real party in interest "has an actual and substantial interest in the subject matter of the action, as distinguished from one who has only a nominal, formal, or technical interest in, or connection with, the case.").

Whether Plaintiff possesses a substantive right is determined by whether the claims in the instant suit belong to Plaintiff personally, i.e. individual claims, or to the Butler Entities, i.e. derivative claims. In Illinois, an action for harm to a limited liability company (LLC) must be brought by the LLC. Freed v. JPMorgan Chase Bank, N.A., No. 12 C 1477, 2012 WL 6193964, at *4 (N.D. Ill. Dec. 12, 2012) ("[T]he claim was undermined by the legal principle (applicable to LLCs as well as to corporations) that 'an action for

harm to the corporation must be brought in the corporate name.'") (quoting Frank, 83 F.3d at 160).  However, a plaintiff may still bring a claim that he has suffered a direct personal injury.  Sterling Radio Stations, Inc. v. Weinstine, 765 N.E.2d 56, 60 (Ill. App. Ct. 4th Dist. 2002) (citing Cashman v. Coopers & Lybrand, 623 N.E.2d 907, 909 (Ill. App. Ct. 4th Dist. 1993)); see also Zokoyich v. Spalding, 344 N.E.2d 805, 813 (Ill. App. Ct. 1st Dist. 1976) (exception to principle that cause of action belongs to the corporation exists "where the wrongful acts are not only against the corporation but are also violations of a duty arising from a contract or otherwise, and owed directly by the wrongdoer to the stockholders").  Whether an action is derivative or direct requires a "strict focus on the nature of the alleged injury, i.e., whether it is to the corporation or to the individual shareholder that injury has been done."  Sterling, 765 N.E.2d at 60.  When a shareholder suffers from an injury to the company, that injury is "derivative" and the shareholder "cannot maintain an action in his own name."  Weissman v. Weener, 12 F.3d 84, 86 (7th Cir. 1993).

The real party in interest for the tortious interference claims is Plaintiff Butler.  Plaintiff's tortious interference claims allege

personal harm to Plaintiff, not only a general harm to the Butler
Entities. The Court acknowledges that Plaintiff cannot recover
indirectly for losses arising from the alleged injury to Butler
Entities' profitability. See Forza Technologies, LLC v. Premier Rsch.
Labs, LP, No. 12 CV 7905, 2013 WL 6355383, at *3 (N.D. Ill. Dec. 5,
2013). In Forza, the court found that the LLC was the real party in
interest for a tortious interference claim, as opposed to its owner.
Id. There, although the statements giving rise to the claim were
directed toward the owner, the harm alleged was to the LLC that
lost its business relationships as a result of the statements. Id.

Here, however, Plaintiff alleges that his expulsion from
Holstein's membership association "ended [his] career in the dairy
farming industry and force[d] him to end all of his business
relationships with third parties Innovative, Jetstream, Endeavor,
[Butler Entities,] and other members of Defendant Holstein." d/e
20, at ¶¶ 120, 128. Plaintiff's harm is distinguishable from the
owner's in Forza because Plaintiff entered into the membership
agreement with Holstein in an individual capacity. Id. at ¶ 22.
Plaintiff's harm is distinguishable from Butler Entities' because
Holstein's expulsion of Plaintiff from its membership association

resulted in harm to Plaintiff directly, in that Plaintiff alleges that he is effectively unable to partake in the business involving Holstein cattle indefinitely.  See id. at ¶¶ 120, 128.  Thus, Plaintiff would be the Rule 17(a) real party in interest in a suit against Holstein for the purposes of his tortious interference claims.

### B. The Court Dismisses Plaintiff's Claim for Tortious Interference with Prospective Business for Failure to Allege that Holstein Directed Action Toward a Third Party.

Plaintiff's amended complaint fails to state a cause of action for tortious interference with prospective business.  Under Illinois law, the elements of a claim of tortious interference with a prospective business expectancy are: "'(1) [the plaintiff's] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference.'" Botvinick v. Rush Univ. Med. Ctr., 574 F.3d 414, 417 (7th Cir.

2009) (alteration in original) (quoting <u>Fellhauer v. City of Geneva</u>, 568 N.E.2d 870, 878 (Ill.1991)).

The Court finds that Plaintiff fails to state a cause of action for intentional interference with prospective business.  "Actions that form the basis of a tortious interference claim must be directed at third-party business prospects." <u>F:A J Kikson v. Underwriters Labs., Inc.</u>, 492 F.3d 794, 800 (7th Cir. 2007) (citing <u>Galinski v. Kessler</u>, 480 N.E.2d 1176, 1180 (Ill. App. Ct. 1st Dist. 1985)). Plaintiff alleges prospective business relations with "third parties Innovative, Jetstream, Endeavor, Dairy Cattle, Boarding, Auctions[,] and other members of Defendant Holstein." d/e 20, at ¶ 120. However, Plaintiff is the founder of Butlerview Holdings, which fully owned Butler Dairy Cattle, Butler Dairy Boarding, and Butler Auctions.  d/e 20, at ¶ 23.  Plaintiff was also the president of Innovative Management and alleges that that Innovative Management was the manager of Innovative.  d/e 20, ¶ 29; d/e 23, Ex. C; <u>see</u> <u>Allen v. Chase Home Fin. LLC</u>, No. 10 C 8270, 2011 WL 3882814, at *4 (N.D. Ill. Sept. 2, 2011) (taking judicial notice of filings with the Illinois Secretary of State).  Plaintiff also alleges that Butlerview owned an interest in Jetstream.  d/e 20, at ¶ 27.  To the

extent that Plaintiff is alleging that Holstein interfered with prospective business relations involving entities that he had ownership or control in, those entities are not third parties. As a result, the only specifically listed third party is Endeavor, who Plaintiff alleges to being involved in a "breeding partnership" with. Id. at ¶ 29. Plaintiff also adequately identifies "other members of Holstein" as a class of third parties for his tortious interference with prospective business claim. d/e 20, ¶ 116; Del Monte Fresh Produce, N.A. Inc. v. Kinnavy, No. 07 C 5902, 2010 WL 1172565 (N.D. Ill. March 22, 2010) (a plaintiff in federal court need not identify a specific third party to survive a motion to dismiss a claim of intentional interference with prospective business).

However, the Court finds that Plaintiff fails to allege that Holstein directed an action toward any third party. Plaintiff alleges that the suspension from Holstein is the action that interfered with his prospective business. d/e 20, ¶¶ 120–22. However, Plaintiff does not allege that Holstein *acted* toward a third party, as required by Illinois case law. The suspension of Plaintiff from Holstein is

directed toward Plaintiff himself, not any third party.  See F:A J
Kikson, 492 F.3d at 800.

Moreover, although Plaintiff alleges that Holstein's notice of
Butler's suspension was published to dairy farmers throughout the
country, Plaintiff does not allege that the publication was false.  d/e
20, at ¶ 109.  Conveying truthful information does not make a
defendant liable for an intentional tortious interference with a
plaintiff's business prospects.  F:A J Kikson, 492 F.3d at 801; see
also Voyles v. Sandia Mortg. Corp., 751 N.E.2d 1126, 1134 (Ill.
2001) (holding that plaintiff's claim for tortious interference with a
prospective business advantage failed because the reports to credit
agencies were "accurate and proper").  As a result, Plaintiff cannot
allege that Holstein's publication of Butler's suspension was an
action directed toward a third party.  Thus, Plaintiff's amended
complaint fails to state a cause of action for intentional interference
with prospective business.  Although the Court has the discretion to
permit Plaintiff to file an amended complaint, it is unnecessary
when, as here, the Court finds that any amendment to the claim
raised in Plaintiff's pleading would be futile.  Luevano v. Wal-Mart
Stores, Inc., 722 F.3d 1014, 1025 (7th Cir. 2013); see also

Gonzalez-Koeneke v. West, 791 F.3d 801, 807 (7th Cir. 2015)

("District courts, nevertheless, 'have broad discretion to deny leave

to amend where there is undue delay, bad faith, dilatory motive,

repeated failure to cure deficiencies, undue prejudice to the

defendants, or where the amendment would be futile.'") (quoting

Arreola v. Godinez, 546 F.3d 788, 796 (7th Cir. 2008)).  Therefore,

Count I is dismissed with prejudice.

### C. The Court Dismisses Plaintiff's Claim for Tortious Interference with Contract for Failure to Allege a Valid Contract or That Holstein Directed Action Toward a Third Party.

Plaintiff's amended complaint fails to state a cause of action

for tortious interference with contract.  Under Illinois law, "[t]o state

a claim for tortious interference with contract, a plaintiff must

allege facts sufficient to establish: (1) a valid contract, (2)

defendant's knowledge of the contract, (3) defendant's intentional

and unjustified inducement of a breach of contract, (4) a

subsequent breach of contract caused by defendant's wrongful

conduct, and (5) damages."  Webb v. Frawley, 906 F.3d 569, 577

(7th Cir. 2018).  Tortious interference with contract requires the

plaintiff "to prove that the defendant induced a third party to

breach a contract." <u>McCoy v. Iberdrola Renewables, Inc.</u>, 760 F.3d 674, 685 (7th Cir. 2014) (citing Illinois law).

First, Plaintiff fails to identify a valid, enforceable contract. Plaintiff asserts that at this stage, he only needs to allege the existence of one third party and is not required to produce the contract with that third party. d/e 26, p. 11. Plaintiff is mistaken. Under Illinois law, interpretation of the relevant contracts are necessary to resolve the tortious interference claim. <u>Healy v. Metro. Pier & Exposition Auth.</u>, 804 F.3d 836, 841–42 (7th Cir. 2015). The elements of tortious interference with contract require the court to interpret the relevant contract terms and determine if a breach of the contract has occurred. <u>Id.</u> at 842. Plaintiff has only identified one contract, with Milksource, in his amended complaint. d/e 20, ¶ 42. Plaintiff does not identify which contractual provisions of the Milksource contract were breached. <u>See</u> <u>Saleh as Trustee of Nabil Saleh M.D. LTD Pension Plan v. Merchant</u>, No. 14-CV-09186, 2019 WL 1331788, at *9 (N.D. Ill. March 25, 2019) (dismissing a claim for tortious interference with contract in party because "[t]he FACC does not identify . . . what contractual provisions were breached."). Plaintiff also alludes to other "agreements" and "contracts," but fails

to identify the relevant contracts.  d/e 20, ¶¶ 33–34.  As a result,

Plaintiff fails to satisfy the first element of a tortious interference

with contract claim.

Second, even if Plaintiff alleged valid contracts with third

parties, Plaintiff fails to allege that Holstein induced a third party to

breach a contract.  Plaintiff alleges that his suspension from

Holstein is the action that interfered with his contracts.  d/e 20, ¶¶

128–30.  The suspension of Plaintiff from Holstein is directed

toward Plaintiff himself, not any third party.  Plaintiff, citing

Scholwin v. Johnson, 498 N.E.2d 249, 255 (Ill. App. Ct. 2d Dist.

1986), argues that interference with the plaintiff's ability to perform,

and not a third party, is enough to state a cause of action.  d/e 26,

p. 9. Since Scholwin, Illinois Appellate Courts have held otherwise.

See, e.g., Schuler v. Abbott Laboratories, 639 N.E.2d 144, 147 (Ill.

App. Ct. 1st Dist. 1993) ("While it is true that 'action directed at a

third party' will often include contact with the third party, we can

find no requirement of contact in the law and do not create one

now."); Cont'l Mobile Tel. Co., Inc. v. Chi. SMSA Ltd. P'ship, 587

N.E.2d 1169, 1174 (Ill. App. Ct. 1st Dist. 1992) ("The acts that form

the basis of tortious interference must be directed at parties other

than the plaintiff."); <u>Du Page Aviation Corp. v. Du Page Airport Auth.</u>, 594 N.E.2d 1334, 1341 (Ill. App. Ct. 2d Dist. 1992) ("Illinois courts require that a tortious interference claim be supported by allegations that the defendant acted toward a third party.").  The Illinois Supreme Court has yet to explicitly address whether the contract must be directed toward a third party, or whether action toward the plaintiff suffices for a tortious interference with contract claim.  Without such guidance, this Court must predict how the Supreme Court of Illinois would resolve the issue.  <u>See</u> <u>Cmty. Bank of Trenton v. Schnuck Mkts.</u>, 887 F.3d 803, 811 (7th Cir. 2018).  "When given a choice between an interpretation of Illinois law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path (at least until the Illinois Supreme Court tells us differently)."  <u>Todd v. Societe Bic, S.A.</u>, 21 F.3d 1402, 1412 (7th Cir. 1994).  As a result, the Court finds that a tortious interference with contract claim requires a defendant to direct an action toward a third party.  Here, Holstein's alleged act of interference was directed toward the Plaintiff, by suspending him for Holstein's membership association, rather than a third party.  <u>See</u> d/e 20, at ¶ 129 ("Defendant

Holstein, intentionally and without justification, banned Butler from Defendant Holstein for a period of five (5) years with no guarantee of being readmitted.").  Therefore, Plaintiff does not sufficiently allege that Holstein directed an action toward a third party.

Additionally, Plaintiff himself is a party to at least some of the contracts that he alleges.  "[A]n entity cannot be liable in tort for interfering with its own contract." Knickman v. Midland Risk Services-Illinois, Inc., 700 N.E.2d 458, 462 (Ill. App. Ct. 4th Dist. 1998).  Plaintiff was the president of Innovative Management and alleges that that Innovative Management was the manager of Innovative.  d/e 20, ¶ 29; d/e 23, Ex. C; see Allen v. Chase Home Fin. LLC, No. 10 C 8270, 2011 WL 3882814, at *4 (N.D. Ill. Sept. 2, 2011) (taking judicial notice of filings with the Illinois Secretary of State).  Plaintiff also alleges that he owned an interest in Jetstream. d/e 20, at ¶ 27.  To the extent that Plaintiff alleges tortious interference with contracts that he was a party to, he does not allege a claim for tortious interference with contract.

Moreover, although Plaintiff alleges that Holstein's notice of Butler's suspension was published to dairy farmers throughout the

country, Plaintiff does not allege that the publication was false.  d/e
20, at ¶ 109.  "There is no liability for interference with a
prospective contractual relation on the part of one who merely gives
truthful information to another."  Atanus v. Am. Airlines, Inc., 932
N.E.2d 1044, 1049 (Ill. App. Ct. 1st Dist. 2010) (citing Soderlund
Bros., Inc. v. Carrier Corp., 663 N.E.2d 1, 10 (Ill. App. Ct. 1st Dist.
1995)).  As a result, Plaintiff cannot allege that Holstein's
publication of Butler's suspension was an action directed toward a
third party.

Thus, Plaintiff's amended complaint fails to state a cause of
action for intentional interference with contract.  Therefore, Count II
is dismissed with prejudice.  See Luevano, 722 F.3d at 1025
(unnecessary to allow amended complaint when any amendment to
claim raised in Plaintiff's pleading would be futile).

### D. The Court Dismisses Plaintiff's Promissory Estoppel Claim (Count III) Because There Exists an Express Contract Between Butler and Holstein.

The Court previously held that a party may plead claims in the
alternative even if the allegations are inconsistent.  d/e 19, p. 31
(citing Bureau Serv. Co. v. King, 721 N.E.2d 159, 163 (Ill. App. Ct.
3d Dist. 1999).  However, upon further briefing, Butler does not

plead promissory estoppel in the alternative to a breach of contract claim.  Rather, Butler advances tortious interference claims.  In doing so, Butler fails to plead a promissory estoppel claim in the alternative.

Moreover, Butler alleges the existence of an express membership agreement that governs his relationship with Holstein and his rights as a member of Holstein.  d/e 20, ¶¶ 132–40. Butler's tortious interference claims stem from a determinantal reliance on his membership privileges, as governed by the membership agreement.  Id. at ¶¶ 140–42.  Holstein also recognizes the existence of an express membership agreement governing Butler's membership.  d/e 23, p. 14.  Under Illinois law, the existence of an express contract "governing the relationship out of which the promise emerged, and [with] no issue of consideration," precludes a claim for promissory estoppel.  All-Tech Telecom, Inc. v. Amway Corp., 174 F.3d 862, 869 (7th Cir. 1999); see also Prentice v. UDC Advisory Servs., Inc., 648 N.E.2d 146, 150 (Ill. App. Ct. 1st Dist. 1995) ("if a party's performance under a written contract is the same performance which satisfies the requirement of detrimental reliance, then that party is barred from seeking redress under the

doctrine of promissory estoppel.").  Here, the parties have acknowledged the existence of a contract governing Butler's relationship to Holstein.  Additionally, Butler does not allege the membership agreement is an unenforceable contract.  Therefore, Count III is dismissed with prejudice.  See Luevano, 722 F.3d at 1025 (unnecessary to allow amended complaint when any amendment to claim raised in Plaintiff's pleading would be futile).

## V.   CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (d/e 22) is GRANTED.  Plaintiff's Amended Complaint (d/e 20) is DISMISSED WITH PREJUDICE in its entirety for failure to state a claim.  Because amendment would be futile, leave to file an amended complaint is not granted.  The Clerk is DIRECTED to close this case and enter judgment.  All pending motions are DENIED AS MOOT.

**ENTERED:  November 21, 2023.**

**FOR THE COURT:**

/s/ Sue E. Myerscough
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**